[No. B022134. Second Dist., Div. Four. Apr. 2, 1987.]

UREZ CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
R. STUART KEEFER, SR., Real Party in Interest.

1142

COUNSEL

Stern & Miller, Mark A. Neubauer and Larry C. Drapkin for Petitioner.

No appearance for Respondent.

Cooper, Epstein & Hurewitz and J. Thomas Cairns, Jr., for Real Party in Interest.

OPINION

**WOODS, P. J.**—This is a writ proceeding by which petitioner seeks to reverse the trial court's denial of its motion to expunge a lis pendens on property which petitioner owns. The lis pendens was filed by real party in interest who, prior to the foreclosure sale in which petitioner acquired the property, held a second trust deed securing a loan made to a former owner.

The real property involved in this action is an undeveloped parcel of land in Malibu. On June 22, 1977, a deed of trust was recorded on the property to secure a $128,000 loan (trust deed). At the time the trust deed was recorded, the property was apparently owned by Catherine Mattox.

On March 2, 1978, a second deed of trust (second) was recorded on the property to secure a loan of $31,600 made by Topa Thrift and Loan. This was subsequently assigned to R. Stuart Keefer (real party in interest).

In January 1980, Mattox, Steve Gannon and Ronald Yates formed a joint venture, called Mattox Associates, No. 1, into which Gannon and Yates each contributed $15,000, for the purpose of developing the property. Under their joint venture agreement Gannon and Yates agreed to pay amounts owing on the trust deed should it become necessary for them to do so. Mattox agreed to "remove" the second by July 1, 1980. Subsequently, Yates purchased Gannon's interest so that he and Mattox were the sole remaining partners of the joint venture.

Yates claimed that Mattox breached her obligations under the joint venture agreement, including her obligation to cure defaults on, and remove, the second. By March 1982, Yates had invested approximately $63,000 into the joint venture and the property remained undeveloped. Yates refused to contribute any additional money to the joint venture.

The trust deed went into default and foreclosure proceedings began. On November 17, 1983, Yates filed articles of incorporation for Urez Corpora-

tion (petitioner). The purpose of the corporation was to attempt to acquire the Malibu property at the foreclosure sale. On November 18, Yates attended the sale on behalf of Urez and was the successful bidder, paying $87,791 to the foreclosing trustee. He received the trustee's deed which was recorded on November 18, 1983.

On February 27, 1985, real party filed an unverified complaint against, inter alia, Yates and Urez Corporation. In the first cause of action, real party alleged fraud and deceit with respect to Yates's formation of Urez and Urez's subsequent acquisition of the Malibu property.

In the second cause of action, real party sought declaratory relief to determine "his rights in and to the subject property." By way of damages, he sought "a judicial declaration" that he was the owner of a beneficial interest in the property and held a lien against it to secure payments of the amounts due under the second.

In the third cause of action, real party sought to impose a constructive trust on the property. By way of remedy, he sought conveyance to himself of beneficial title to the property for the purpose of securing payment of amounts due under the second.

In February 1985, real party filed and recorded a lis pendens under Code of Civil Procedure section 409. Petitioner answered the complaint and moved to expunge the lis pendens under Code of Civil Procedure section 409.1. Petitioner's motion was denied and this petition was filed. This court issued an alternative writ which sought "authority and analysis on the foundational question of whether the underlying action 'does affect title to or right of possession of the real property described in the notice.' " After review we have concluded that it does not.

## I.

### A.

A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice. (Code Civ. Proc., § 409.) The effect of such notice is that anyone who acquires an interest in the property after the action has been filed will be bound by any judgment which may thereafter be rendered in the action. (*Kendall-Brief Co.* v. *Superior Court* (1976) 60 Cal.App.3d 462, 468 [131 Cal.Rptr. 515].)

Our lis pendens statute is in derogation of the common law. "Historically, the American statutes providing for recording of a notice of pendency of an

action affecting title to or possession of real property were designed to limit, rather than to expand, the common law doctrine of constructive notice." (*Allied Eastern Financial* v. *Goheen Enterprises* (1968) 265 Cal.App.2d 131, 132 [71 Cal.Rptr. 126].)

■ The history of the lis pendens legislation indicates a legislative intent to restrict rather than broaden the application of the remedy. (*Moseley* v. *Superior Court* (1986) 177 Cal.App.3d 672, 678 [223 Cal.Rptr. 116].) This is because of the ease with which a lis pendens can be recorded and the serious consequences flowing from it. Once a lis pendens is filed, it "clouds the title to the property and prevents its transfer until the litigation is resolved or the lis pendens is expunged. [Citation.]" (*Malcolm* v. *Superior Court* (1981) 29 Cal.3d 518, 523 , fn. 2 [174 Cal.Rptr. 694, 629 P.2d 495].) Accordingly, lis pendens is a provisional remedy which should be applied narrowly.

### B.

Code of Civil Procedure section 409.1 is one of two expungement provisions of the lis pendens statute. Under section 409.1, expungement is required unless the party who has filed the notice demonstrates by a preponderance of the evidence that the underlying action affects "title to or right of possession of the real property described in the notice" and was brought for a proper purpose and in good faith. There has been no definitive interpretation of the phrase "affect title to or right of possession."

■ On the one hand, it is clear that an action that affects ownership of the disputed property is a proper action for a lis pendens notice. (*Nash* v. *Superior Court* (1978) 86 Cal.App.3d 690, 692 [150 Cal.Rptr. 394], overruled on unrelated grounds in *Malcolm* v. *Superior Court, supra,* 29 Cal.3d at p. 528, fn. 5 [action for specific performance of an agreement for sale of residential property].) It has also been held that a lis pendens is proper in an action that would affect or impair the owner's right of possession of real property. (*Kendall-Brief Co.* v. *Superior Court, supra,* 60 Cal.App.3d 462.)

On the other hand, an action for money damages alone will not support a lis pendens. (*Allied Eastern Financial* v. *Goheen Enterprises, supra,* 265 Cal.App.2d at pp. 133-134.)

In *Allied Eastern,* the plaintiff contracted to secure a loan to defendant which was to be used to make improvements on the defendant's land. Plaintiff sued for breach of contract and recorded a lis pendens. The contract did not provide for a lien or encumbrance upon the property and the plaintiff's action was for money damages only. The Court of Appeal affirmed expunge-

ment of the lis pendens holding: "Appellant concedes that its action does not affect title or possession of real property, but since it does remotely 'concern' real property argues that it may record the questioned notice. Such construction would go far beyond the common law rule, and would defeat the true purpose of the statute, which was to restrict, rather than to broaden, that rule." (*Id.,* at pp. 133-134.)

However, two decisions from the Fourth District, Division Two, have seemingly sought to broaden the definition of which actions affect title or right of possession for the purposes of the lis pendens statute. (*Okuda* v. *Superior Court* (1983) 144 Cal.App.3d 135 [192 Cal.Rptr. 388]; *Coppinger* v. *Superior Court* (1982) 134 Cal.App.3d 883 [185 Cal.Rptr. 24].)

In *Coppinger,* plaintiff purchased a house from defendants which she subsequently discovered showed signs of termite infestation. She brought an action alleging fraud in the inducement of the residential sale contract. Pleading alternative remedies, plaintiff sought money damages but also recision of the sale and the imposition of a constructive trust on defendants' new property on the theory that it had been purchased with money from the sale. Plaintiff also filed a lis pendens on defendants' new house. Defendants moved to expunge the notice. Their motion was denied and they appealed.

Defendants argued that an action to impose a constructive trust on real property is not an action affecting title to or right to possession of the property. The court disagreed. A constructive trust was broadly defined as "an equitable remedy to prevent unjust enrichment and enforce restitution, under which one who wrongfully acquires property of another holds it involuntarily as a constructive trustee, . . . [Citations.]" (*Coppinger, supra,* 134 Cal.App.3d at p. 891.) The court then cited *Marshall* v. *Marshall* (1965) 232 Cal.App.2d 232, 250 [42 Cal.Rptr. 686], for the proposition that "[a]n action to impose a constructive trust on real property has been held to be an action for the recovery of real property within the meaning of Code of Civil Procedure section 318 prescribing a five-year statute of limitations. [Citation.]" (*Coppinger, supra,* at p. 891.)

Accordingly, the *Coppinger* court concluded that an action to impose a constructive trust on real property is an action affecting title to or possession of real property. Defendants also argued that the lis pendens should be expunged under section 409.2. That section permits expungement upon the giving by the moving party of an undertaking which the court finds would provide adequate relief should the party recording the lis pendens prevail in the underlying action. Concluding that the plaintiff's interest in the property upon which the lis pendens was recorded was "purely monetary," the

Court of Appeal directed the trial court to expunge the lis pendens upon the giving of an undertaking.

In *Okuda* v. *Superior Court, supra,* 144 Cal.App.3d 135, plaintiffs entered a contract with defendants for the sale of a house. Plaintiffs moved into the house and made numerous improvements, only to discover that defendants had never transferred title of the property to them. Plaintiffs sued seeking, inter alia, relief as good faith improvers under Code of Civil Procedure section 871.1. They sought an amount equal to the costs of the improvements and an equitable lien upon the property to secure payment of that amount. They then filed a lis pendens which defendants successfully moved to expunge. The Court of Appeal, again Fourth District, Division Two, reversed.

The court observed that section 871.1, the good faith improver statute, vested a court with broad equitable power to fashion appropriate remedies, and that its drafters specifically contemplated the use of equitable liens. (*Okuda, supra,* 144 Cal.App.3d at p. 139.) Thus, "in any action brought under section 871.5 the court could impose an equitable remedy which could affect the title or the right of possession of the improved property." (*Ibid.*) "Hence, on the basis of their claim for relief under section 871.5, the Okudas were clearly entitled as a matter of law to record a lis pendens against the subject real property." (At p. 140.)

To defendants' claim that plaintiffs' action was one for damages only, the court replied that the fact plaintiffs sought "damages as well as equitable relief does not dilute the court's broad equitable jurisdiction under section 871.5." (*Id.,* at p. 141.) Then, apparently going beyond the good faith improver statute, the court said, "it is beyond dispute that an equitable lien is a direct charge or encumbrance upon the property, such that the property itself may be proceeded against in an equitable action and either sold or sequestered, and its proceeds applied in favor of the person in whose favor it exists. [Citation.] Therefore an action to establish or foreclose an equitable lien is clearly one which affects the title or the right to possession of real property. [Citation.]" (*Ibid.*) The court found further support for this conclusion based upon the similarities of the constructive trust remedy in *Coppinger* and the equitable lien remedy. (*Ibid.*)

Three recent decisions have declined to follow *Coppinger.* In *Burger* v. *Superior Court* (1984) 151 Cal.App.3d 1013 [199 Cal.Rptr. 227], plaintiff advanced money to defendant to make improvements on land owned by plaintiff. Instead, defendant allegedly diverted the money to make improvements on his own land. Plaintiff sued for damages and recorded a lis pendens on defendant's land. Defendant's motion for expungement was denied. The

First District reversed, rejecting plaintiff's assertion of a constructive trust. The court distinguished and questioned the *Coppinger* decision. The court pointed out that a constructive trust " 'is a remedy used by a court of equity to compel a person who has property to which he is not justly entitled to transfer it to the person entitled thereto.' " (*Id.,* at p. 1018, quoting 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 131, p. 5487 (italics deleted).) In this case, however, "[t]ransfer of [defendant's property to plaintiff] is not an appropriate remedy where, as here, only improvements amounting to considerably less than the overall value of the property are involved." (*Ibid.*)

Additionally, the *Burger* court observed that: "A commentator has expressed reservations as to *Coppinger's* broad endorsement of lis pendens in claimed constructive trust actions on the ground that it tends 'to create a right substantially similar to an ex parte prejudgment attachment of the defendant's assets, a remedy disfavored in California and severely limited because of its due process problems.' (Cal. Lis Pendens Practice [Cont.Ed.Bar 1983] Preparation and Recording, § 2.7, p. 32; [citations]." (*Ibid.*) The *Burger* court concluded "[o]verbroad definition of 'an action . . . affecting the title or the right of possession of real property' would invite abuse of lis pendens." (*Ibid.*)

*Coppinger* was also distinguished in *Deane v. Superior Court* (1985) 164 Cal.App.3d 292 [210 Cal.Rptr. 406], in which the court commented that "*Coppinger* in no way supports the notion that a constructive trust may be imposed and a lis pendens recorded to secure an ordinary business debt. A lis pendens is not a shortcut method of attachment for unsecured creditors." (*Id.,* at p. 297.)

Finally, in *Moseley v. Superior Court, supra,* 177 Cal.App.3d 672, plaintiffs sought to record a lis pendens on condominium units while they pursued an action challenging an amendment that effectively repealed a county ordinance which would have made the units available for purchase by low and moderate income families. The Court of Appeal affirmed expungment of the lis pendens, observing that *Coppinger* was inapposite since plaintiffs had failed to seek imposition of a constructive trust on the subject property.

However, inadequate pleading was not the only ground on which the court rejected application of *Coppinger*. The court also said: "The 'constructive trust' theory of *Coppinger* is about as far as California courts have gone to extend lis pendens protection to a party who really has no present claim to an interest in or possession of the property on which the lis pendens has been imposed." (*Moseley v. Superior Court, supra,* 177 Cal.App.3d at p. 677.)

We find *Berger* and *Moseley* to be the better-reasoned cases and reject Coppinger's broad definition of actions which affect title or possession of real property.

■■■ This case differs factually from the cases we have discussed but is most similar to *Coppinger*. It is essentially a fraud action seeking money damages with additional allegations urged to support the equitable remedies of a constructive trust or an equitable lien. Real party does not claim any ownership or possessory interest in the subject property. Rather, he seeks reinstatement or creation of a "beneficial" interest in the property for the purpose of securing payment of money owed him under his defunct second trust deed.

Whether real party's action is ultimately meritorious is not relevant to the determination of the propriety of his lis pendens. (*Malcolm* v. *Superior Court, supra,* 29 Cal.3d at p. 522 [expungement procedure is not a minitrial on the merits of the underlying action].)

The issue is simply whether the action as pleaded is one that affects title or possession of the subject property. Real party argues that he seeks to impose his equitable claims on the same property from which the underlying action arose giving him a stronger case than *Coppinger*. He contends that he was a secured creditor prior to foreclosure and what he seeks in this action is an interest in the subject property that will reinstate this status. But the fact remains that this purported interest does not go to legal title or possession of the subject property. Even before foreclosure, real party was a lienholder whose lien did not transfer any interest in title. (Civ. Code, § 2888.) He does not seek recision of the foreclosure sale or conveyance of the subject property to himself. At bottom, the "beneficial" interest real party claims in the subject property is for the purpose of securing a claim for money damages. In our view allegation of this interest is not an action affecting title or possession of real property.

We conclude, therefore, that allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages. It must be borne in mind that the true purpose of the lis pendens statute is to provide notice of pending litigation and not to make plaintiffs secured creditors of defendants nor to provide plaintiffs with additional leverage for negotiating purposes.

Having disposed of the case on this ground, it is not necessary to address petitioner's remaining contentions.

Let a peremptory writ of mandate issue commanding respondent court to vacate its order denying petitioner's motion to expunge lis pendens and to issue a new and different order granting the motion and expunging the lis pendens.

Kingsley, J., and McClosky, J., concurred.